114 P.3d 627 (2005)
154 Wash.2d 438
STATE of Washington, Respondent,
v.
Michael R. EVANS, Petitioner.
In re the Matter of the Personal Restraint of Shawn Swenson, Petitioner.
Nos. 74851-9, 75766-6.
Supreme Court of Washington, En Banc.
Argued November 10, 2004.
Decided June 16, 2005.
*629 Linda J. King, Tacoma, David Zuckerman, Seattle, for Petitioner.
Kathleen Proctor, Donna Yumiko Masumoto, Ann Marie Summers, Pierce County Prosecuting Atty. Ofc., Tacoma, Deborah A. Dwyer, Ann Marie Summers, King Co. Pros. Ofc./Appellate Unit, Seattle, for Respondent.
James Elliot Lobsenz, Carney Badley Spellman, Rita Joan Griffith, Sheryl Gordon McCloud, Seattle, for Amicus Curiae (Washington Association of Criminal Defense Lawyers).
CHAMBERS, J.
¶ 1 After Apprendi, every fact (other than the fact of a prior conviction) that increases the defendant's sentence beyond the statutory maximum may be used only if it was either proved beyond a reasonable doubt to the trier of fact at trial or admitted by the defendant. Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (citing Jones v. United States, 526 U.S. 227, 252-53, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)). In Blakely, the Supreme Court clarified that the "statutory maximum" did not refer to the maximum sentence authorized by the legislature for the crime (as almost every court considering the issue had concluded). Instead "statutory maximum" meant the maximum sentence a trial judge was authorized to give without finding additional facts, in the case of the Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW, the top of the standard sentencing range. Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 2538, 159 L.Ed.2d 403 (2004).
*630 ¶ 2 Prior to Blakely, judges in Washington State could sentence offenders outside of the standard range under the exceptional sentence provisions of the SRA, RCW 9.94A.530 and RCW 9.94A.535. This means that there are offenders currently serving sentences that, if issued today, would be the result of an unconstitutional sentencing procedure. We must decide whether these offenders are entitled to the benefit of Blakely. Michael Evan's conviction was final before both Apprendi and Blakely. Shawn Swenson's conviction was final after Apprendi but before Blakely. Together they offer us the opportunity to address several of the issues surrounding the retroactivity of Blakely.
¶ 3 We conclude that neither Apprendi nor Blakely applies retroactively on collateral review to convictions that were final when Blakely was announced. Accordingly, Evans and Swenson are not entitled to be re-sentenced. However, we conclude that the erroneous accomplice liability instruction used in Swenson's case, coupled with the prosecutor's arguments, caused actual and substantial prejudice to his constitutional rights. Accordingly, we vacate his conviction and remand for further proceedings.

FACTS
¶ 4 EVANS. Late one night, Michael R. Evans repeatedly entreated a woman working at a convenience store to help him jump start his car. Once she left the comparative safety of the store, Evans grabbed her from behind, held a knife to her throat, forced her into a stolen car, bound her hands and feet, and drove her to Portland, Oregon. Five hours after her ordeal began, he raped her. Evans was convicted by a Pierce County jury of first degree rape.
¶ 5 Evan's standard range sentence for the crime was 149-198 months, plus a 24 month deadly weapon enhancement. The trial court additionally found Evans acted with deliberate cruelty and excessive violence and gave him an exceptional sentence of 360 months. The trial court was affirmed on review, and the conviction became final in 1991. After Apprendi was announced, Evans sought collateral relief on the grounds that his sentence was clearly unconstitutional because the trial judge based it on facts that were not found by a jury beyond a reasonable doubt. The courts below denied relief, and we granted review to decide whether Blakely and/or Apprendi apply retroactively. State v. Evans, 152 Wash.2d 1011, 99 P.3d 895 (2004).
¶ 6 SWENSON. Shawn D. Swenson was convicted of first degree felony murder in the 1995 killing of David Loucks. State v. Swenson, 104 Wash.App. 744, 747, 9 P.3d 933 (2000). Swenson's conviction became final before Blakely was announced. He already had a timely personal restraint petition pending, largely challenging the erroneous accomplice liability instruction used in his case. He also argued his sentence was illegal based on Apprendi because the trial judge, instead of the jury, found the facts that led to his exceptional sentence. While Swenson's petition for collateral relief was under consideration, the United States Supreme Court announced Blakely. We granted a motion to transfer this case from the Court of Appeals primarily to decide whether Blakely applied retroactively to cases final after Apprendi but before Blakely.

RETROACTIVITY AND FEDERAL CONSTITUTIONAL LAW
¶ 7 Our first task is to determine whether Apprendi or Blakely applies retroactively to cases already final when they are announced. The law favors finality of judgments, and courts will not routinely apply "new" decisions of law to cases that are already final. In re Pers. Restraint of St. Pierre, 118 Wash.2d 321, 329, 823 P.2d 492 (1992); cf. State v. Hanson, 151 Wash.2d 783, 790, 91 P.3d 888 (2004). Generally, we have followed the lead of the United States Supreme Court when deciding whether to give retroactive application to newly articulated principles of law. See In re Pers. Restraint of Markel, 154 Wash.2d 262, 268, 111 P.3d 249 (2005) (citing In re Pers. Restraint of Sauve, 103 Wash.2d 322, 328, 692 P.2d 818 (1985)).
¶ 8 Under this federal common law retroactivity analysis:
1. A new rule for the conduct of criminal prosecutions is to be applied retroactively *631 to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a clear break from the past.
2. A new rule will not be given retroactive application to cases on collateral review except where either: (a) the new rule places certain kinds of primary, private individual conduct beyond the power of the state to proscribe,[[1]] or (b) the rule requires the observance of procedures implicit in the concept of ordered liberty.
St. Pierre, 118 Wash.2d at 326, 823 P.2d 492 (citing Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) and Teague v. Lane, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (O'Connor, J., opinion)).
¶ 9 "New" cases are those that "break[ ] new ground or impose[] a new obligation on the States or the Federal government [or] ... if the result was not dictated by precedent existing at the time the defendant's conviction became final." Teague, 489 U.S. at 301, 109 S.Ct. 1060 (citations omitted). If before the opinion is announced, reasonable jurists could disagree on the rule of law, the opinion is new. Beard v. Banks, 542 U.S. 406, 124 S.Ct. 2504, 2510, 159 L.Ed.2d 494 (2004). We have no trouble concluding that Apprendi announced a new rule of law. Reasonable minds could, and did, differ on the constitutionality of determinate sentencing schemes. Cf. McMillan v. Pennsylvania, 477 U.S. 79, 84-85, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (upholding statute that imposed mandatory minimum sentence on defendants sentencing judge found were visibly armed). See generally Simpson v. United States, 376 F.3d 679, 681 (7th Cir.2004) (collecting cases finding Apprendi not retroactive).
¶ 10 A new procedural rule will be applied retroactively if it is "implicit in the concept of ordered liberty," implicating the fundamental fairness of the trial. St. Pierre, 118 Wash.2d at 326, 823 P.2d 492 (citing Mackey v. United States, 401 U.S. 667, 692-93, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring)). "A rule that qualifies under this exception must not only improve accuracy, but also "`alter our understanding of the bedrock procedural elements'" essential to the fairness of a proceeding." Sawyer v. Smith, 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (quoting Teague, 489 U.S. at 311, 109 S.Ct. 1060 (O'Connor, J., opinion) and Mackey, 401 U.S. at 693, 91 S.Ct. 1160 (Harlan, J., concurring)). It is not enough for the right to be important; it must also play a vital instrumental role in securing a fair trial.
¶ 11 The right of trial by jury is not merely important, it is a fundamental right secured by the United States Constitution. It finds its roots in the core principles upon which this nation was founded. U.S. CONST. amend. VI; see also generally Sofie v. Fibreboard Corp., 112 Wash.2d 636, 771 P.2d 711, 780 P.2d 260 (1989). As Justice Scalia noted:
Our commitment to Apprendi in this context reflects not just respect for longstanding precedent, but the need to give intelligible content to the right of jury trial. That right is no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary.
Blakely, 124 S. Ct at 2538-39. The brilliance of our constitution is in its multiplicity of checks and balances. The jury trial is not only the right of the accused it also further assures governance by the people. The jury system permits the people to participate in and provide another check on potential abuses of courts and government. But how the jury right is enjoyed is largely a question of procedural law, and reasonable changes may be made so long as these changes do not trench on the core purposes and protections of the constitutionally ensured right. See Blakely, 124 S.Ct. at 2538-39.
¶ 12 At common law, after a trial of the facts on the merits by a jury, sentencing was *632 largely up to the sound discretion of the trial judge. See Blakely, 124 S.Ct. at 2544 (O'Connor, J., dissenting) (citing David Boerner & Roxanne Lieb, Sentencing Reform in the Other Washington, 28 CRIME AND JUSTICE 71, 73 (Michael Tonry ed.2001)). Many factors considered by the sentencing judge were not traditionally subject to the right of trial by jury. See generally State v. Smith, 150 Wash.2d 135, 154, 75 P.3d 934 (2003) (citing DAVID BOERNER, SENTENCING IN WASHINGTON: A LEGAL ANALYSIS OF THE SENTENCING REFORM ACT OF 1981 § 2.2(a) (1985) (discussing evolution of sentencing practice)). But sentencing procedures have changed considerably over the years. See generally United States v. Booker, ___ U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621(2005).
¶ 13 The United States Supreme Court has recently revisited the retroactivity of new procedural rules in Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). Schriro was announced by the Supreme Court the same day as Blakely. Justice Scalia wrote for a majority of the Court in both cases. In Schriro, the Court decided that a new rule announcing constitutionally required proceedings in death penalty sentencing hearings would not apply retroactively. See Schriro, 124 S.Ct. at 2521-23. The stakes in Schriro were especially high; the offenders it would affect were men and women sentenced to death as a result of a procedure that the Supreme Court had subsequently found unconstitutional. Id.; see also Lambrix v. Singletary, 520 U.S. 518, 540, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) (refusing to apply new procedural rule retroactively even though it went to whether the sentence of death was properly pronounced); Graham v. Collins, 506 U.S. 461, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (new rules on proper consideration of mitigating evidence not retroactive to prior death sentences). Despite these stakes, the high court explicitly found that the identity of the fact finder for sentencing purposes was not implicit in the concept of ordered liberty and did not implicate the fundamental fairness of the proceedings.[2] The mere fact the right was important did not make it a watershed rule of criminal procedure under Teague. The same principles apply to Apprendi.[3]
¶ 14 We conclude that Apprendi is not a watershed rule of criminal procedure. Accordingly, we join our sister courts and hold that it does not apply retroactively to cases already final on direct review. Simpson, 376 F.3d at 681 (collecting cases).
¶ 15 Having decided that Apprendi does not meet the standard for retroactive application, Blakely is less difficult. Blakely concerned the definition of "statutory maximum" as meant by Apprendi. Before Blakely, courts around the country had found that "statutory maximum" was the maximum sentence allowed by law for the crime, rather than the maximum standard range sentence. See, e.g., State v. Gore, 143 Wash.2d 288, 313-14, 21 P.3d 262 (2001), overruled by State v. Hughes, 154 Wash.2d 118, 110 P.3d 192 (2005); contra Blakely, 124 S.Ct. at 2536-37. Accordingly, we have no difficulty concluding that Blakely was a "new" rule.
*633 ¶ 16 Blakely is procedural as it concerns itself with how sentencing is to be conducted. However, it is not a watershed rule of criminal procedure implicit in the concept of ordered liberty. It no more affects the fundamental fairness of the proceeding than the principles at stake in Schriro. Cf. Schriro, 124 S.Ct. at 2521-23. We conclude that under Teague, neither Apprendi nor Blakely applies retroactively to cases already final on direct review. Accord Markel, 154 Wash.2d at 274-75, 111 P.3d 249.[4]

RETROACTIVITY AND STATE LAW
¶ 17 Next, petitioners argue for retroactive application of Blakely based on state law. RCW 10.73.100(6) allows collateral relief from judgment even after the normal time bar has lapsed based on a "material" change in the law when the court or the legislature finds "sufficient reasons" for retroactive application.[5] The statutory language has been interpreted along the lines of Teague. See generally Markel, 154 Wash.2d at 268, 111 P.3d 249. There may be a case where our state statute would authorize or require retroactive application of a new rule of law when Teague would not. Cf. In re Pers. Restraint of Vandervlugt, 120 Wash.2d 427, 432-33, 842 P.2d 950 (1992) (vacating exceptional sentence based on invalid sentencing factor); In re Pers. Restraint of Smith, 117 Wash.App. 846, 860-70, 73 P.3d 386 (2003). As Chief Justice Rehnquist sagely noted, Teague was "grounded in important considerations of federal-state relations." Collins v. Youngblood, 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Limiting a state statute on the basis of the federal court's caution in interfering with State's self-governance would be, at least, peculiar. However, petitioners do not make a compelling case that there are reasons for retroactive application that are sufficient under state law.

ACCOMPLICE LIABILITY
¶ 18 Swenson also challenges the use of the erroneous pattern accomplice liability instruction, 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.51, at 157 (2d ed. 1994) (WPIC), at his trial. See State v. Stein, 144 Wash.2d 236, 246, 27 P.3d 184 (2001); State v. Roberts, 142 Wash.2d 471, 510-11, 14 P.3d 713 (2000); State v. Cronin, 142 Wash.2d 568, 576-77, 14 P.3d 752 (2000).
¶ 19 The prosecution largely based its case on the theory that the jury should convict Swenson of first degree felony murder if it found that Swenson was either the principle or an accomplice in the underlying crime of robbery. It also contended that the jury should convict Swenson of robbery based on nothing more than his admission that he intended to commit theft against the victim.
¶ 20 The victim, David Loucks, owned and ran a recording studio in Seattle. In 1995, Swenson and Joseph Gardner arranged to use Loucks's studio one evening, purportedly to record music. Instead, Swenson and/or Gardner shot Loucks repeatedly with a stun gun, bound him, beat him, and killed him. They also stole his recording equipment. Swenson, 104 Wash.App. at 747, 9 P.3d 933.
¶ 21 The next year, a warrant was issued for Swenson's arrest on a charge of theft from a different recording studio. While being interviewed, Swenson revealed information about Loucks's death. Swenson admitted to the police that he frequently stole recording equipment to cover debts to a person who, he said, had threatened his family. He claimed that this creditor provided Gardner to assist with a theft of Loucks's studio, and that he only learned later that Gardner had killed Loucks. Subsequently, he volunteered to detectives he had seen Gardner attack Loucks but had immediately left *634 the scene and taken no part in the assault, robbery, or killing.
¶ 22 Swenson was charged with one count of first degree felony murder predicated on first or second degree robbery. Swenson testified on his own behalf. Among other things, he admitted to the jury on the stand that he had agreed to commit theft to pay his creditors. He insisted that he had not agreed or intended to commit robbery or murder. He admitted he saw Gardner attack Loucks but asserted that he promptly left the crime scene and did not know Loucks had been killed until much later. He claimed he was only a thief and "never had Robbery in his heart," let alone any contemplation that a victim might die. Pers. Restraint Pet. at 17.
¶ 23 Gardner also testified. His recollection of events was different. Gardner (who pleaded guilty to murder in return for a low sentencing recommendation from the prosecution) testified that the murder was largely Swenson's plan, and he was merely following Swenson's lead. According to Gardner, Swenson had come to the studio armed and carrying duct tape. Swenson, 104 Wash. App. at 751, 9 P.3d 933. There was substantial evidence that Gardner actually killed Loucks, although a stun gun similar to the one used in the killing was found in Swenson's apartment. Gardner's apartment was never searched.
¶ 24 The accomplice liability instruction given in this case stated:
A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.
A person is an accomplice in the commission of a crime if, with the knowledge that it will promote or facilitate the commission of a crime, he or she either:
(1) solicits, commands, encourages, or requests another person to commit the crime; or
(2) aids or agrees to aid another person in planning or committing a crime.

Pers. Restraint Pet.App. B (Instruction 13) (emphasis added). The to-convict instruction stated in part that:
To convict the defendant of the crime of murder in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt;
(1) That on or about the 7th day of March, 1995, David Gregory Loucks was killed;
(2) That the defendant was committing or attempting to commit Robbery in the First Degree or Robbery in the Second Degree;
(3) That the defendant or an accomplice caused the death of David Gregory Loucks in the course of or in furtherance of such crime or in immediate flight from such crime.
State's Resp. to Pers. Restraint Pet.App. L (Instruction 3) (emphasis added). Robbery was defined in relevant part for the jury:
A person commits the crime of robbery when he or she unlawfully and with intent to commit theft thereof takes personal property from the person or in the presence of another against that person's will by the use or threatened use of immediate force, violence, or fear of injury.
State's Resp. to Pers. Restraint Pet.App. L (Instruction 4) (emphasis added). Theft was also defined:
Theft means to wrongfully obtain or exert unauthorized control over the property of another, or the value thereof, with intent to deprive that person of such property.
Wrongfully obtain means to take wrongfully the property of another.
State's Resp. to Pers. Restraint Pet.App. L (Instruction 5). Additionally, the jury was instructed on the statutory defense to felony murder, which instructed the jury to acquit if it found by a preponderance of the evidence that Swenson was not armed and had no intent to kill or to participate in a killing. State's Resp. to Pers. Restraint Pet.App. L (Instruction 15).
¶ 25 Swenson objected to the accomplice liability instruction, arguing that it incorrectly stated the law of the State of Washington by relieving the State of its burden to prove the defendant had the requisite intent to commit the crime charged. This instruction was subsequently found erroneous by *635 this court in Roberts and Cronin. Roberts, 142 Wash.2d at 510-11, 14 P.3d 713; Cronin, 142 Wash.2d at 576-77, 14 P.3d 752; see also Stein, 144 Wash.2d at 246, 27 P.3d 184. Swenson submitted an instruction that would have cured the error, but it was rejected.
¶ 26 The heart of Swenson's defense was he was only a thief and "never had Robbery in his heart." Pers. Restraint Pet. at 17. Under the instructions given, his ability to present this defense was severely impaired, especially because the prosecutor relied so heavily on the pre-Cronin theory of accomplice liability in her presentation of this case. She argued to the jury that:
[T]he best way to describe accomplice liability under the law is that when you're in for a dime, you're in for a dollar. That's a phrase that really embodies what the law intends....
The law intends that it's not a defense to say "I only meant to rob him, not kill him. I only meant to steal from him, not assault him."
The law of accomplice liability means, ladies and gentleman, as Instruction No. 12 says, a person is legally accountable for all the conduct of another.
"Legal accountability" means that you are responsible for both the intended and unintended consequences of your criminal conduct, the intended and unintended consequences of your criminal conduct. You bear responsibility....
That is accomplice liability. In for a dime, in for a dollar. In for a dime, in for a dollar. You are responsible for the intended and the unintended consequences of your conduct.
Pers. Restraint Pet. at 15-16. In response to Swenson's argument that he did not have murder or robbery "in his heart," the prosecutor argued to the jury again, "[i]n for a dime, in for a dollar" and "when he tells you that, `I'm just a thief; I'm not a killer,' think of accomplice liability." Pers. Restraint Pet. at 17. The trial court overruled defense counsel's objections to that line of argument. Id.
¶ 27 In short, the jury was given the erroneous "a" crime instruction. Swenson's defense was that he only committed theft. Theft was an uncharged crime, and it was defined in instruction 5. The prosecutor, over objection, repeatedly made the argument that the jury could convict Swenson of murder based only on his intent to steal the recording equipment. The error was properly raised, properly preserved, and diligently pursued on appeal.
¶ 28 Further, the only direct evidence contradicting Swenson's testimony came from Gardner, who admitted participation in the murder but entered into a plea agreement in which he testified against Swenson and received a substantially shorter sentence. Swenson called several witnesses, including relatives of Gardner who quoted Gardner as saying that he was angry with Swenson because "that chicken shit ran out on us." Pers. Restraint Pet. at 12. The remaining evidence tying Swenson to the murder was largely circumstantial.
¶ 29 The jury convicted. Judge Patricia H. Aitken subsequently found at a sentencing hearing that the murder was committed with deliberate cruelty and gave Swenson an exceptional sentence of 666 months. The Court of Appeals affirmed his conviction. After the opinion was published, but before it mandated, this court announced in Roberts and Cronin that the instruction given was erroneous. Swenson sought reconsideration based on those cases, which was summarily denied. State's Resp. to Pers. Restraint Pet.App. F. We denied review.
¶ 30 Swenson timely filed this personal restraint petition, primarily to renew his argument that the erroneous accomplice liability instruction relieved the State of its obligation to prove every element of the crime. See Stein, 144 Wash.2d at 241, 27 P.3d 184. Since this case is on collateral review, Swenson bears the burden of establishing that he was actually and substantially prejudiced by this claimed constitutional error. St. Pierre, 118 Wash.2d at 328, 823 P.2d 492.
¶ 31 We will not reverse a conviction based on instructional error even on direct review if we are convinced beyond a reasonable doubt that the error was harmless. *636 State v. Brown, 147 Wash.2d 330, 340, 58 P.3d 889 (2002) (quoting Neder v. United States, 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). Additionally, since this matter was already considered on direct review, Swenson must show the interests of justice require reconsideration. Vandervlugt, 120 Wash.2d at 432-33, 842 P.2d 950; Smith, 117 Wash.App. at 859, 73 P.3d 386.
¶ 32 Read together, the jury instructions allowed the jury to convict Swenson of murder without finding he personally attempted or committed robbery, if it found (as he admitted) that he was only an accomplice in the theft and that an accomplice had committed the murder without his knowledge.[6] Swenson has shown instructional error.
¶ 33 Swenson must also show actual and substantial prejudice from the errors at trial. See In re Pers. Restraint of Cook, 114 Wash.2d 802, 810-11, 792 P.2d 506 (1990) (citing In re Pers. Restraint of Haverty, 101 Wash.2d 498, 504, 681 P.2d 835 (1984)). Washington courts have already held that, if evidence of an uncharged crime is before the jury and the State argues that the defendant's participation in the uncharged crime triggered liability for the crime charged, there may be actual and substantial prejudice. See State v. Teal, 117 Wash.App. 831, 843-44, 73 P.3d 402 (2003), aff'd on other grounds, 152 Wash.2d 333, 96 P.3d 974 (2004); State v. Stovall, 115 Wash. App. 650, 652, 657, 63 P.3d 192 (2003), review denied sub nom. State v. Roberts, 150 Wash.2d 1021, 81 P.3d 119 (2003); State v. Grendahl, 110 Wash.App. 905, 911, 43 P.3d 76 (2002) (reversible error to instruct jury it could find defendant guilty as an accomplice to robbery on the basis of intent to assist a theft); cf. In re Pers. Restraint of Sims, 118 Wash.App. 471, 73 P.3d 398 (2003).
¶ 34 We conclude Swenson has shown actual and substantial prejudice flowing from the instruction. Again, we are struck by the fact the State repeatedly told the jury that it could convict of murder without finding that Swenson intended to do anything but steal the recording equipment. Pers. Restraint Pet. at 17 ("When you engage in criminal conduct, you are responsible for the intended and the unintended consequences of your actions. You're responsible for the actions of your accomplice.... And when he tells you that, `I'm just a thief; I'm not a killer,' think accomplice liability."). Swenson's ability to present his defense was fatally compromised. He has shown actual and substantial prejudice.
¶ 35 However, when grounds for relief have been raised on direct review, the petitioner bears the additional burden of demonstrating that "the ends of justice would be served by reexamining the issue." In re Pers. Restraint of Gentry, 137 Wash.2d 378, 388, 972 P.2d 1250 (1999) (citing Vandervlugt, 120 Wash.2d at 432, 842 P.2d 950 and In re Pers. Restraint of Taylor, 105 Wash.2d 683, 688, 717 P.2d 755 (1986)). As the United States Supreme Court cautioned, whether the ends of justice are served by reexamining the issue "`cannot be too finely particularized.'" Taylor, 105 Wash.2d at 688-89, 717 P.2d 755 (quoting Sanders v. United States, 373 U.S. 1, 16-17, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963)). We have held that the ends of justice would be served if there had been an intervening change in the law "`"or some other justification for having failed to raise a crucial point or argument in the prior application."'" Gentry, 137 Wash.2d at 388, 972 P.2d 1250 (quoting Taylor, 105 Wash.2d at 688, 717 P.2d 755) (quoting Sanders, 373 U.S. at 16, 83 S.Ct. 1068).
¶ 36 First, we note that the circumstances in Swenson's case are unique and unlikely to be replicated. Swenson objected to the erroneous accomplice liability instructions and raised the error on direct appeal. Without the benefit of our forthcoming decisions in Roberts and Cronin, the Court of Appeals rejected his claim. The Court of Appeals concluded:
[E]ven if the jury believed Swenson's testimony that he intended only to commit "a crime" (theft) and did not know that Gardner intended to commit "the crime" (robbery *637  that is theft by use of force), Swenson had the requisite state of mind for the underlying crime of robbery  and could be found guilty of felony murder as either a principal or as an accomplice.
Swenson, 104 Wash.App. at 762, 9 P.3d 933. Thus, the Court of Appeals opinion was directly contrary to the holding of Roberts and Cronin.[7]
¶ 37 Two months after the Court of Appeals filed its opinion in Swenson, but before the mandate had issued, this court announced Roberts and Cronin. We made it clear that the WPIC accomplice liability instruction was erroneous, at least in the context of first degree aggravated murder. At the time, Swenson had a motion for reconsideration pending before the court. Swenson filed a statement of additional authorities, citing Roberts and Cronin. The motion for reconsideration was nonetheless summarily rejected by the Court of Appeals without meaningfully addressing the issue raised by our opinions in Roberts and Cronin.
¶ 38 Since we have granted review of this case on a separate issue, and since it appears Swenson was convicted on a theory of law that is not the law of the state, and since his conviction was not final when Roberts and Cronin were announced, we feel compelled to reach the merits of Swenson's individual challenge. Under the peculiar facts and procedural posture of this case, Swenson has shown that the interests of justice do justify revisiting this question; the Court of Appeals' summary dismissal of his argument was not sufficient to review its merits. Since we also conclude the instruction relieved the State of its burden to prove an element of the crime, and that Swenson has shown actual and substantial prejudice, we reverse.

CONCLUSION
¶ 39 We hold that Blakely and Apprendi do not apply generally on collateral review. We grant Swenson's petition on Roberts grounds and do not reach his remaining arguments. We decline to reach amicus's habeas corpus arguments. Swenson's motion to appoint counsel is granted. CrR 3.1(b)(2); RAP 16.15(h).
Concurring: ALEXANDER, C.J., C. JOHNSON, MADSEN, BRIDGE, OWENS, FAIRHURST, JJ., and IRELAND, J.P.T.
SANDERS, J. (concurring).
¶ 40 As a matter of logic and principle, I find it difficult to accept one's constitutional right to a jury trial on sentencing factors may be abridged, without remedy, when the issue is first raised based on new case law in the context of a personal restraint petition. But a slim majority (5-4) of the United States Supreme Court in Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), seems to say exactly that. What can I do but concur in the decision of our majority?
NOTES
[1] This type of retroactivity is not before us. Neither Blakely nor Apprendi concerned the type of conduct the State can regulate.
[2] The petitioners attempt to analogize sentencing factors to elements of the underlying crime. Generally, the legislature is constitutionally vested with the authority to decide whether a particular fact is an element of the crime or merely relevant to sentencing. Harris v. United States, 536 U.S. 545, 550, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002); cf. Blakely, 124 S.Ct. at 2539-40. We find the petitioners' arguments unavailing at this time. We do not, of course, reach whether sentencing factors may be analogous to elements in other contexts.
[3] Swenson argues that Schriro is distinguishable because only the ultimate fact finder, not the burden of proof, was inconsistent with Apprendi. We recognize that there were pre-Teague cases that applied changes or shifts to the burden of proof retroactively, at least to cases on direct review. See Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (articulating rule); Hankerson v. North Carolina, 432 U.S. 233, 240, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977) (applying Mullaney retroactively). However, the Ninth Circuit has already considered and rejected the same argument Swenson brings on the grounds that Apprendi neither shifts the burden of proof nor relates to criminal convictions. United States v. Sanchez-Cervantes, 282 F.3d 664, 671 (9th Cir.2002). We agree. Accordingly, we follow the modern trend and find that Apprendi and its progeny do not announce a watershed rule of criminal procedure.
[4] Petitioners also argue that even if Blakely was not dictated by Apprendi, it was inevitable after Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) and/or Harris v. United States, 536 U.S. 545, 550, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). We disagree. Ring (a death penalty case) never discussed the definition of "statutory maximum." Harris involved a mandatory minimum, not a maximum. Neither dictated the result in Blakely.
[5] As Swenson's petition is timely, RCW 10.73.100(6) does not apply to him. It does, however, give some guidance to the legislature's assessment of the proper scope of retroactive application of new rules.
[6] We recognize that the jury instructions also would have supported a jury's conclusion that it could not find Swenson guilty of murder without also finding he had personally committed the robbery.
[7] Since Swenson's conviction was not final until after publication of Roberts and Cronin, there is no concern about retroactive application, regardless of whether Roberts and Cronin announce a new rule of law. See generally St. Pierre, 118 Wash.2d at 326, 823 P.2d 492.