276 P.3d 311 (2012)
167 Wn. App. 712
In re the Personal Restraint Petition of Baron Nadder HAGHIGHI,[1] Petitioner.
No. 65130-7-I.
Court of Appeals of Washington, Division 1.
April 16, 2012.
*312 Nancy P. Collins, Seattle, WA, for Appellant.
Donna Lynn Wise, Attorney at Law, Seattle, WA, for Respondent.
LAU, J.
¶ 1 Baron Haghighi's personal restraint petition (PRP) challenges his judgment and sentence for unlawful issuance of checks or drafts (UICD) and first degree theft. The trial court admitted bank records under the inevitable discovery rule. We adhered to that rule on direct appeal in affirming Haghighi's convictions. Haghighi claims that rejection of the inevitable discovery rule in State v. Winterstein, 167 Wash.2d 620, 220 P.3d 1226 (2009),[2] decided weeks after his *313 appeal became final, applies retroactively to his case. He also argues deficient performance by his appellate counsel. Because Winterstein does not apply retroactively on collateral review to convictions that were final when Winterstein was decided and the ineffective assistance of counsel claim is time barred, we dismiss Haghighi's petition.

FACTS
¶ 2 The facts of this case are fully discussed in Haghighi's direct appeal. State v. Haghighi, noted at 151 Wash.App. 1047, 2009 WL 2515775. We repeat only the facts necessary to resolve this PRP.
¶ 3 The State charged Haghighi with seven counts of unlawful issuance of checks or drafts and one count of first degree theft. The charges all related to bad checks Haghighi presented to six victims between November 15, 2005, and January 3, 2006. The checks were drawn on accounts Haghighi opened at Washington Mutual Bank and Allstate Bank. The State sought an exceptional sentence based on Haghighi's history of passing bad checks.
¶ 4 Before trial, defense counsel moved to suppress Haghighi's Allstate bank records. A superior court judge had previously approved a search warrant for those records on February 27, 2006. By that point, several victims had identified Haghighi by photomontage and provided copies of fraudulent checks to the police. The search warrant affidavit identified account and check numbers involved. Allstate provided the records after Kent Police Detective Robert Kaufmann faxed the search warrant to Allstate's Illinois office. Defense counsel acknowledged probable cause existed to support the search warrant. He argued that the "extraterritorial search and seizure lacked constitutional authority" and that "its fruits must be excluded." Haghighi, 151 Wash.App. 1047, 2009 WL 2515775, at *2. The trial court rejected the constitutional violation claim but found the warrant unenforceable in Illinois premised on the State's failure to follow proper warrant enforcement procedures. Relying on the inevitable discovery rule, the court denied suppression of the bank records. The court also denied defense counsel's request for an inevitable discovery evidentiary hearing.
¶ 5 The jury convicted Haghighi on all counts. The court imposed exceptional sentences on all counts96 months on the theft and 60 months on the UIDCs, all to run concurrently.
¶ 6 On appeal, Haghighi primarily claimed that the State failed to prove it would have inevitably discovered his Allstate bank records and that the trial court erred by not conducting an evidentiary hearing. Haghighi, 151 Wash.App. 1047, 2009 WL 2515775 at *7. We adhered to the inevitable discovery rule[3] and held that the trial court properly concluded the State would have discovered Haghighi's bank records despite the warrant's unenforceability. Haghighi, 151 Wash.App. 1047, 2009 WL 2515775 at *8.
¶ 7 Shortly after the finality of Haghighi's appeal, our Supreme Court held in Winterstein that the inevitable discovery rule violates article I, section 7 of the Washington Constitution. Haghighi timely filed a PRP in March 2010, alleging Winterstein's retroactive application in his case.[4]

DISCUSSION
¶ 8 To obtain collateral relief by means of a PRP, the petitioner must show that there was a "constitutional error that resulted in actual and substantial prejudice to the petitioner or that there was a nonconstitutional error that resulted in a fundamental *314 defect which inherently results in a complete miscarriage of justice." In re Pers. Restraint Petition of Woods, 154 Wash.2d 400, 409, 114 P.3d 607 (2005). The petitioner must show by a preponderance of the evidence that the error was prejudicial. In re Pers. Restraint Petition of Lord, 152 Wash.2d 182, 188, 94 P.3d 952 (2004).

Retroactivity
¶ 9 In Haghighi's case, we affirmed the trial court's reliance on the inevitable discovery rule before Winterstein held the rule unconstitutional under Washington law. Haghighi contends that Winterstein constitutes a change in the law that applies retroactively to his case. He specifically argues that (1) Winterstein announces no new rule under our state Supreme Court jurisprudence and (2) even if retroactivity analysis applies, state and not federal retroactivity analysis applies to his case. The State counters that Winterstein lacks retroactive application to cases already final when it was decided.
¶ 10 Washington courts attempt to maintain congruence with the United States Supreme Court in analyzing retroactivity. In re Pers. Restraint Petition of Markel, 154 Wash.2d 262, 268, 111 P.3d 249 (2005); see also State v. Evans, 154 Wash.2d 438, 444, 114 P.3d 627 (2005) ("Generally, we have followed the lead of the United States Supreme Court when deciding whether to give retroactive application to newly articulated principles of law."). Under the federal common law retroactivity analysis,
"1. A new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a clear break from the past.
"2. A new rule will not be given retroactive application to cases on collateral review except where either: (a) the new rule places certain kinds of primary, private individual conduct beyond the power of the state to proscribe, or (b) the rule requires the observance of procedures implicit in the concept of ordered liberty."
Evans, 154 Wash.2d at 444, 114 P.3d 627 (footnote omitted) (quoting In re Pers. Restraint Petition of St. Pierre, 118 Wash.2d 321, 326, 823 P.2d 492 (1992)). Our Supreme Court more recently applied federal retroactivity analysis in In re Per. Restraint Petition of Scott, 173 Wash.2d 911, ___, 271 P.3d 218 (2012) (quoting Evans, 154 Wash.2d at 444, 114 P.3d 627).[5]
¶ 11 Under retroactivity analysis, "[a] `new rule' is one that `breaks new ground' or `was not dictated by precedent existing at the time the defendant's conviction became final.'" Markel, 154 Wash.2d at 270, 111 P.3d 249 (quoting Teague v. Lane, 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion)). "`If before the opinion is announced, reasonable jurists could disagree on the rule of law, the rule is new.'" Scott, ___ Wash.2d at ___, 271 P.3d 218 (quoting Evans, 154 Wash.2d at 444, 114 P.3d 627).
¶ 12 Haghighi acknowledges his convictions were final on direct appeal before Winterstein was decided. He claims,

Winterstein did not announce a new rule for purposes of Supreme Court jurisprudence. It marked a departure from Court of Appeals precedent. But the State cites no cases that mandate a Teague[6] retroactivity analysis when the Supreme Court disagrees with a Court of Appeals decision and addresses an issue consistent with its own long-standing precedent.
Appellant's Reply Br. at 1-2. For this proposition, Haghighi relies on State v. O'Neill, 148 Wash.2d 564, 62 P.3d 489 (2003).
¶ 13 In O'Neill, the State argued that a drug pipe and a baggie of cocaine found during an illegal search of the defendant's car were admissible under the inevitable discovery *315 rule. O'Neill, 148 Wash.2d at 573, 591-92, 62 P.3d 489. Our Supreme Court held:
[T]he inevitable discovery rule cannot be applied in these circumstances, because it would undermine our holding that a lawful custodial arrest must be effected before a valid search incident to that arrest can occur. If we apply the inevitable discovery rule, there is no incentive for the State to comply with article I, section 7's requirement that the arrest precede the search.
O'Neill, 148 Wash.2d at 592, 62 P.3d 489 (emphasis added) (footnote omitted). The court commented in a footnote, "We leave for another case the question whether the [inevitable discovery rule] might apply in another context under article I, section 7, a question we have not decided." O'Neill, 148 Wash.2d at 592 n. 11, 62 P.3d 489 (emphasis added).
¶ 14 In Winterstein, the State argued that evidence obtained during a warrantless search was admissible under the inevitable discovery rule. Winterstein, 167 Wash.2d at 631, 220 P.3d 1226. Our Supreme Court noted that in O'Neill, "we recognized that there is no established inevitable discovery exception under article I, section 7." Winterstein, 167 Wash.2d at 635, 220 P.3d 1226. "We further noted our disapproval of the inevitable discovery doctrine under the circumstances of [O'Neill]." Winterstein, 167 Wash.2d at 635, 220 P.3d 1226 (emphasis added). The court concluded, "Consistent with this precedent, we reject the inevitable discovery doctrine because it is incompatible with the nearly categorical exclusionary rule under article I, section 7." Winterstein, 167 Wash.2d at 636, 220 P.3d 1226. In doing so, the court expressly overruled Court of Appeals decisions that applied the inevitable discovery rule.[7]Winterstein, 167 Wash.2d at 634-35, 220 P.3d 1226. The court explained, "The reasoning of these Court of Appeals cases is flawed ... because it relies on the federal rationale for the inevitable discovery doctrine." Winterstein, 167 Wash.2d at 635, 220 P.3d 1226. The court found the federal inevitable discovery analysis "at odds with the plain language of article I, section 7, which we have emphasized guarantees privacy rights with no express limitations." Winterstein, 167 Wash.2d at 635, 220 P.3d 1226.
¶ 15 We are unpersuaded by Haghighi's "no new rule" claim. We conclude Winterstein's inevitable discovery holding announced a new rule for retroactivity purposes because this holding was not "`dictated'" by prior precedent. Markel, 154 Wash.2d at 270, 111 P.3d 249 (quoting Teague, 489 U.S. at 301, 109 S.Ct. 1060). As discussed above, Winterstein referred to its precedent in O'Neill, in which the court expressly left undecided the question of whether the inevitable discovery rule could ever be compatible with article I, section 7. O'Neill, 148 Wash.2d at 592 n. 11, 62 P.3d 489. O'Neill held that under the particular circumstances before it, the inevitable discovery rule violates article I, section 7. O'Neill, 148 Wash.2d at 592, 62 P.3d 489. Until Winterstein, no Washington Supreme Court opinion categorically rejected the inevitable discovery rule as incompatible with article I, section 7. Given O'Neill's limited holding and the Court of Appeals decisions applying the inevitable discovery rule, "`reasonable jurists could disagree on the rule of law ...'" before Winterstein was decided.[8]Scott, ___ Wash.2d at ___, 271 P.3d 218 (quoting Evans, 154 Wash.2d at 444, 114 P.3d 627). If before the opinion is announced, reasonable jurists could disagree on the rule of law, the opinion is new. Beard v. Banks, 542 U.S. 406, 413, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004). We conclude that Winterstein announced a new rule of law.
¶ 16 We turn next to the retroactivity question. There is no dispute that Winterstein involves no "`primary, private individual conduct beyond the power of the state to *316 proscribe.'"[9]Winterstein applies retroactively only if it "`requires the observance of procedures implicit in the concept of ordered liberty.'" Evans, 154 Wash.2d at 444, 114 P.3d 627 (quoting St. Pierre, 118 Wash.2d at 326, 823 P.2d 492. This exception is reserved for only a "`small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'") Markel, 154 Wash.2d at 269, 111 P.3d 249 (internal quotation marks omitted) (quoting Schriro v. Summerlin, 542 U.S. 348, 352, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004)). The United States Supreme Court has noted, "`This class of rules is extremely narrow, and it is unlikely that any ... ha[s] yet to emerge.'" Markel, 154 Wash.2d at 269, 111 P.3d 249 (internal quotation marks omitted) (alterations in original) (quoting Summerlin, 542 U.S. at 352, 124 S.Ct. 2519); see also In re Pers. Restraint Petition of Rhome, 172 Wash.2d 654, 666, 260 P.3d 874 (2011).
¶ 17 "`That a new procedural rule is fundamental in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is seriously diminished.'" Rhome, 172 Wash.2d at 667, 260 P.3d 874 (internal quotation marks omitted) (quoting Summerlin, 542 U.S. at 352, 124 S.Ct. 2519). Such a rule must "`alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.'" Rhome, 172 Wash.2d at 667, 260 P.3d 874 (emphasis omitted) (internal quotations omitted) (quoting Sawyer v. Smith, 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990)).
¶ 18 We conclude Winterstein does not meet the requirements for a watershed rule of criminal procedure. The exclusion of relevant evidence is not a rule "`without which the likelihood of an accurate conviction is seriously diminished.'" Rhome, 172 Wash.2d at 667, 260 P.3d 874 (internal quotation marks omitted) (quoting Summerlin, 542 U.S. at 352, 124 S.Ct. 2519). The Winterstein court held the inevitable discovery rule unconstitutional premised on Washington Constitution, article I, section 7's guarantee of privacy and personal rights with no express limitations. See Winterstein, 167 Wash.2d at 631-36, 220 P.3d 1226. Nor does Winterstein "`alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.'" Rhome, 172 Wash.2d at 667, 260 P.3d 874 (emphasis omitted) (internal quotation marks omitted) (quoting Sawyer, 497 U.S. at 242, 110 S.Ct. 2822). As discussed above, Winterstein specifically addresses privacy under Washington's Constitution. That the United States Supreme Court[10] adheres to the inevitable discovery exception to the exclusionary rule supports our conclusion that no bedrock rule of fundamental fairness is implicated here.
¶ 19 Haghighi contends in the alternative that an independent state law retroactivity analysis applies under RAP 16.4(c)(4) and RCW 10.73.100(6). RAP 16.4 is a procedural rule that provides grounds for a petitioner to challenge his or her restraint and states in relevant part:
(c) Unlawful Nature of Restraint. The restraint must be unlawful for one or more of the following reasons:
....
(4) There has been a significant change in the law, whether substantive or procedural, which is material to the conviction, sentence, or other order entered in a criminal proceeding or civil proceeding instituted by the state or local government, and sufficient reasons exist to require retroactive application of the changed legal standard; or
....
(d) Restrictions. The appellate court will only grant relief by a personal restraint petition if other remedies which may be available to petitioner are inadequate under the circumstances and if such relief may be granted under RCW 10.73.090,.100, and .130. No more than one petition for similar relief on behalf of the same petitioner will be entertained without good cause shown.
*317 RAP 16.4 (emphasis added) (boldface omitted). RCW 10.73.100(6) mirrors the language in RAP 16.4(c)(4), providing an exception to the one-year time limit for collateral attack when there has been a significant change in the law and either the legislature or a court has provided the change be retroactive.[11]
¶ 20 Citing dictum in Evans, Haghighi argues for retroactive application of Winterstein based on state law. In Evans, our Supreme Court noted, "There may be a case where [RCW 10.73.100(6)] would authorize or require retroactive application of a new rule of law when Teague would not." Evans, 154 Wash.2d at 448, 114 P.3d 627. But the court declined to reach that issue. It concluded, "[P]etitioners do not make a compelling case that there are reasons for retroactive application that are sufficient under state law." Evans, 154 Wash.2d at 449, 114 P.3d 627. The court reasoned, "Generally, we have followed the lead of the United States Supreme Court when deciding whether to give retroactive application to newly articulated principles of law." Evans, 154 Wash.2d at 444, 114 P.3d 627. In State v. Abrams, 163 Wash.2d 277, 291, 178 P.3d 1021 (2008), our Supreme Court cited Evans for the proposition that "[w]e have interpreted [RCW 10.73.100(6)] consistent with [the Teague federal retroactivity analysis]." Moreover, RAP 16.4(d) provides that the appellate court "will only grant relief ... if such relief may be granted under RCW 10.73.090, .100, and .130." Because the Abrams court interpreted the statutory language of RCW 10.73.100(6) consistent with Teague, the Teague federal retroactivity analysis also applies to RAP 16.4(c)(4). We conclude that RAP 16.4(c)(4) does not establish an independent state retroactivity analysis.
¶ 21 Haghighi cites to no Washington case applying a rule retroactively on collateral attack based on a retroactivity analysis other than Teague.[12]See State v. Logan, 102 Wash.App. 907, 911 n. 1, 10 P.3d 504 (2000) ("`Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'") (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wash.2d 122, 126, 372 P.2d 193 (1962)). Our Supreme Court has consistently applied federal retroactivity analysis to state constitutional questions. See, e.g., St. Pierre, 118 Wash.2d 321, 823 P.2d 492 (applying federal retroactivity analysis to state constitutional claim); Scott, ___ Wash.2d at ___, 271 P.3d 218 (same). We decline to depart from binding Supreme Court precedent.
¶ 22 Based on the reasons discussed above, we hold that Winterstein does not apply retroactively on collateral review to convictions that were final when Winterstein was decided and no independent state retroactivity standard exists.

Ineffective Assistance
¶ 23 Haghighi also argues that his appellate counsel failed to advise him to petition for review regarding the inevitable discovery rule's validity under the state constitution before his case became final. The State contends that Haghighi's ineffective assistance claim is time barred under RCW 10.73.090 and, alternatively, that Haghighi fails to establish that counsel was ineffective.
¶ 24 RCW 10.73.090(1) bars review of an untimely collateral attack of a judgment and sentence. "No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1).[13] Collateral attack includes the filing of a PRP.
*318 ¶ 25 RCW 10.73.090(2). The time bar runs from [t]he date that an appellate court issues its mandate disposing of a timely direct appeal from the conviction" if that is the last triggering event. RCW 10.73.090(3)(b). "RCW 10.73.090 is a mandatory rule that acts as a bar to appellate court consideration of PRPs filed after the limitation period has passed, unless the petitioner demonstrates that the petition is based on one of the exemptions enumerated in RCW 10.73.100."[14]In re Pers. Restraint Petition of Bonds, 165 Wash.2d 135, 140, 196 P.3d 672 (2008). RCW 10.73.090's one-year time limit is not jurisdictional; rather it is a statute of limitations issue. Bonds, 165 Wash.2d at 140, 196 P.3d 672.
¶ 26 In Bonds, our Supreme Court held that the principles of timely filing and finality of judgments preclude consideration of arguments made in an untimely amended PRP. Bonds, 165 Wash.2d at 143-44, 196 P.3d 672. The court reasoned, "Though the appellate rules do not expressly authorize or prohibit amendment to PRPs, we have accepted amendments to a PRP made within the statutory time limit." Bonds, 165 Wash.2d at 140, 196 P.3d 672. Even if a petitioner does not move to amend his PRP, his opening brief serves as an amended PRP if it adds a claim not raised in his PRP. In re Pers. Restraint Petition of Davis, 151 Wash.App. 331, 335 n. 6, 211 P.3d 1055 (2009).
¶ 27 We issued a mandate on Haghighi's direct appeal on September 25, 2009. He timely filed his initial PRP on March 16, 2010. He failed to raise a claim of ineffective assistance of counsel in his initial PRP. His brief, which raises that claim for the first time, was filed on May 13, 2011nearly 20 months after we issued our mandate on his appeal. Haghighi raised no potential exceptions or exemptions to RCW 10.73.090's time bar. Accordingly, his ineffective assistance claim is time barred.
¶ 28 Haghighi argues that the ineffective assistance claim he raised in his brief should "relate back" to his original PRP because the arguments in his brief and the original petition "rest on the same core legal issue, involving the application of Winterstein and the inevitable discovery analysis used as the basis to admit illegally seized evidence." Appellant's Reply Br. at 8. He cites to Federal Rule of Civil Procedure 15, which governs amended and supplemental pleadings. That rule provides, "An amendment to a pleading relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set outor attempted to be set outin the original pleading." Fed.R.Civ.P. 15(c)(1)(B).
¶ 29 Washington's civil rules contain a similar provision. See CR 15(c). But in In re Personal Restraint Petition of Benn, 134 Wash.2d 868, 938-39, 952 P.2d 116 (1998), our Supreme Court noted, "There is no provision in the rules of appellate procedure similar to CR 15(c) ... indeed, there is no provision at all regarding amendments to personal restraint petitions." The court emphasized that "postconviction challenges must be brought within one year after a conviction becomes final" and that RCW 10.73.100 allows only "limited exceptions" to RCW *319 10.73.090's statute of limitation. Benn, 134 Wash.2d at 938, 952 P.2d 116. Haghighi cites to no Washington case in which a PRP petitioner was permitted to "relate back" an untimely argument based on the civil rules. His ineffective assistance claim is time barred.[15]

CONCLUSION
¶ 30 Winterstein does not apply retroactively in Haghighi's case and his ineffective assistance claim is time barred. Accordingly, we dismiss his PRP.
WE CONCUR: SCHINDLER and GROSSE, JJ.
NOTES
[1] In court documents, both "Baron Nadder Haghighi" and "Nadder Baron Haghighi" are used. For consistency in this opinion, we use "Baron Nadder Haghighi."
[2] In Winterstein, our Supreme Court "reject[ed] the inevitable discovery doctrine because it is incompatible with the nearly categorical exclusionary rule under article I, section 7 [of the Washington Constitution]." Winterstein, 167 Wash.2d at 636, 220 P.3d 1226.
[3] Under this rule, evidence that would normally be suppressed is admissible "if the State can prove by a preponderance of the evidence that the police did not act unreasonably or in an attempt to accelerate discovery, and the evidence would have been inevitably discovered under proper and predictable investigatory procedures." State v. Avila-Avina, 99 Wash.App. 9, 17, 991 P.2d 720 (2000).
[4] Haghighi made several other arguments in his PRP, but we dismissed his petition as to all issues except Winterstein's retroactivity. See Order of Partial Dismissal and Referral, No. 65130-7-1 (Dec. 22, 2010).
[5] Scott held that State v. Recuenco, 163 Wash.2d 428, 180 P.3d 1276 (2008) (holding that trial judge lacked authority to impose a firearm enhancement based on a jury's deadly weapon special verdict) is not retroactive. Scott, ___ Wash.2d at ___, 271 P.3d 218.
[6] Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).
[7] These cases were State v. Avila-Avina, 99 Wash.App. 9, 17, 991 P.2d 720 (2000); State v. Reyes, 98 Wash.App. 923, 930, 933, 993 P.2d 921 (2000); State v. Richman, 85 Wash.App. 568, 577, 933 P.2d 1088 (1997).
[8] Haghighi also argues that in State v. Gaines, 154 Wash.2d 711, 116 P.3d 993 (2005), our Supreme Court signaled that the inevitable discovery rule did not apply under our state constitution. But in Gaines, despite granting review in a case involving application of the rule, the court resolved the case on other grounds and did not reach the inevitable discovery issue. Gaines, 154 Wash.2d at 716 n. 5, 116 P.3d 993.
[9] I.e., Winterstein did not decriminalize the conduct for which Haghighi was punished. See Rhome, 172 Wash.2d at 666, 260 P.3d 874.
[10] Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).
[11] As Haghighi's PRP was timely as to the retroactivity issue, RCW 10.73.100(6) does not apply to him. "It does, however, give some guidance to the legislature's assessment of the proper scope of retroactive application of new rules." Evans, 154 Wash.2d at 448 n. 5, 114 P.3d 627.
[12] Haghighi cites to cases from other states that have developed state law to govern retroactivity in state collateral attack cases. See Appellant's Reply Br. at 3-4. But he cites to no such case in Washington.
[13] RAP 16.4 incorporates the requirements of RCW 10.73.090(1).
[14] RCW 10.73.100 provides: "The time limit specified in RCW 10.73.090 does not apply to a petition or motion that is based solely on one or more of the following grounds:

"(1) Newly discovered evidence, if the defendant acted with reasonable diligence in discovering the evidence and filing the petition or motion;
"(2) The statute that the defendant was convicted of violating was unconstitutional on its face or as applied to the defendant's conduct;
"(3) The conviction was barred by double jeopardy under Amendment V of the United States Constitution or Article I, section 9 of the state Constitution;
"(4) The defendant pled not guilty and the evidence introduced at trial was insufficient to support the conviction;
"(5) The sentence imposed was in excess of the court's jurisdiction; or
"(6) There has been a significant change in the law, whether substantive or procedural, which is material to the conviction, sentence, or other order entered in a criminal or civil proceeding instituted by the state or local government, and either the legislature has expressly provided that the change in the law is to be applied retroactively, or a court, in interpreting a change in the law that lacks express legislative intent regarding retroactive application, determines that sufficient reasons exist to require retroactive application of the changed legal standard."
[15] Because we do not reach the merits of Haghighi's ineffective assistance claim, the cases Haghighi cites in his statement of additional authorities, filed after oral argument, are inapplicable.