[No. 82951-9.   En Banc.]
Argued November 16, 2010.     Decided March 1, 2012.

*In the Matter of the Personal Restraint of* JOSHUA DEAN
SCOTT, *Respondent.*

*Mark E. Lindquist, Prosecuting Attorney for Pierce County*, and *Michelle Hyer, Kathleen Proctor*, and *Thomas C. Roberts, Deputies*, for petitioner.

*Suzanne Lee Elliott*, for respondent.

¶1 CHAMBERS, J. — In the wake of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), we held that a trial judge lacked the authority to impose a firearm enhancement based on a jury's deadly weapon special verdict. *State v. Recuenco*, 163 Wn.2d 428, 442, 180 P.3d 1276 (2008) (*Recuenco* III). We now must decide whether a court may refer to verdict forms to determine whether a judgment and sentence is valid on its face and thus not subject to collateral attack under RCW 10.73.090 and whether *Recuenco* III applies retroactively to cases that were final when it was announced. We conclude that a court may consult the verdict forms to illuminate whether a judgment and sentence is valid on its face but that *Recuenco* III is not retroactive. We reverse the Court of Appeals and dismiss this petition.

## FACTS

¶2 In September 2000, Joshua Dean Scott and his partner in crime, Douglas Sean James-Anderson, robbed Cascade Custom Jewelers in south Tacoma. They brought several guns, including an AR-15 semiautomatic rifle. Alerted by a silent alarm, the police were waiting in the store's parking lot when Scott and James-Anderson emerged. They both ran, and they both were caught. Scott

was charged with and convicted of multiple counts of first degree robbery, unlawful possession of firearms, possession of stolen property, and possession of stolen firearms. The jury also found by special verdict that Scott was armed with a deadly weapon while committing most of the counts. On direct review, the Court of Appeals reversed the possession of stolen firearms charges, finding insufficient evidence that Scott knew the guns used in the robbery had been stolen, and remanded for resentencing.

¶3 Scott was resentenced on April 9, 2004. He received a total sentence of 213 months, including 156 months for the firearm enhancements. The trial judge checked a box on Scott's judgment and sentence indicating that "[a] special verdict/finding for use of firearm was returned on Count(s) I, II, V." J. & Sentence at 2. The jury had returned a deadly weapon verdict. Aside from checking the box, the trial judge made no formal, separate finding of fact that Scott was armed with a firearm.

¶4 Under the "Hard Time for Armed Crime Act" of 1995 (Initiative 159), the penalty for committing a crime while armed with a firearm is considerably longer than the penalty for committing a crime with any other deadly weapon. *Compare* LAWS OF 1995, ch. 129, § 3 (firearm enhancements), *with* § 2 (deadly weapon enhancements).[1] For example, under the initiative, committing a class A felony with a firearm would come with a five year sentencing enhancement; the same crime committed with a deadly weapon would carry only a three year enhancement. *Id.* Scott did not appeal again, and on May 9, 2004, his judgment and sentence became final.

---

[1] As currently codified, an offender is subject to one schedule of enhancements "[i]f the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010," RCW 9.94A.533(3), and another schedule of enhancements "if the offender or an accomplice was armed with a deadly weapon other than a firearm as defined in RCW 9.41.010," RCW 9.94A.533(4). "Firearm" is defined in RCW 9.41.010, but "deadly weapon other than a firearm" is not. While the phrase "deadly weapon other than a firearm enhancement" is probably more precise, we use the commonly accepted term "deadly weapon enhancement" to refer to RCW 9.94A.533(4) enhancements.

¶5 Six weeks later, the United States Supreme Court announced *Blakely*, 542 U.S. 296, placing Washington's sentencing procedures into some doubt.[2] The next year, we held both that *Blakely* error could not be harmless and that *Blakely* was not retroactive. *State v. Recuenco*, 154 Wn.2d 156, 110 P.3d 188 (2005) (*Recuenco* I); *State v. Evans*, 154 Wn.2d 438, 114 P.3d 627 (2005). In 2006, well after the one year time bar had lapsed, Scott filed this personal restraint petition. Also that year, the United States Supreme Court reversed our opinion in *Recuenco* I and held that *Blakely* error could be harmless under federal law. *Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) (*Recuenco* II). On remand, this court concluded that harmless error was not the proper analytical approach to allegations of *Blakely* error, at least in the context of a firearm enhancement based on a deadly weapon finding. Instead, "[t]he error . . . occurred when the trial judge imposed a sentence enhancement for something the State did not ask for and the jury did not find. The trial court simply exceeded its authority in imposing a sentence not authorized by the charges." *Recuenco* III, 163 Wn.2d at 442. Given the way *Recuenco* was framed, we had no occasion to consider whether it applied to cases that were final when it was announced.

---

[2] As described by one commentator:

> On June 24, 2004, five black-clad figures seized control of the Criminal Justice Express, crashed through warning barriers, flattened the Washington State Sentencing Guidelines, opened the throttle, and sent the train hurtling from the main line down the old rail spur where the Federal Sentencing Guidelines and the sentencing systems of numerous states lay tied helplessly to the tracks. Whereupon, the 2003 Term of Court being concluded, the justices twirled their collective mustachios, sent their robes off to the cleaners, and went on vacation. Two months on, as this Essay goes to press, the rest of us stand staring slack-jawed, some delighted and some aghast, at the disarray and paralysis in the locomotive's wake and the impending carnage at the end of the line.
>
> I refer, of course, to *Blakely v. Washington*.

Frank O. Bowman, III, Essay, *Train Wreck? Or Can the Federal Sentencing System Be Saved? A Plea for Rapid Reversal of* Blakely v. Washington, 41 AM. CRIM. L. REV. 217, 218 (2004).

¶6 While the Court of Appeals concluded that the trial court had the authority to find Scott was armed with a firearm and thus subject to the firearm enhancement, given the lack of a written finding, it concluded that Scott's judgment and sentence was facially invalid, granted his petition, and remanded for resentencing based on the lower, deadly weapons enhancements. *In re Pers. Restraint of Scott*, 149 Wn. App. 213, 222, 202 P.3d 985 (2009). Shortly afterward, a different division of the court below concluded on substantially similar facts that a pre-*Blakely* judgment and sentence imposing a firearm enhancement was facially valid and thus not subject to collateral attack because the fact a firearm was used was "necessarily reflected in the jury's general verdict of guilt," despite the lack of a formal written finding. *In re Pers. Restraint of Rivera*, 152 Wn. App. 794, 796, 218 P.3d 638 (2009), *review granted*, No. 83923-9 (Sept. 12, 2011), *and consolidated under In re Pers. Restraint of Jackson*, No. 82363-4 (Nov. 3, 2011). We granted the State's motion for review. *In re Pers. Restraint of Scott*, 168 Wn.2d 1010, 227 P.3d 295 (2010).

## 1. FACIAL VALIDITY

¶7 A criminal judgment and sentence that is valid on its face may not be challenged more than one year after it becomes final except under enumerated statutory grounds not raised here. RCW 10.73.090, .100. Scott contends that his judgment and sentence is invalid on its face because he was sentenced for a firearm enhancement based on a jury's special verdict that he possessed a deadly weapon. The State contends that the judgment and sentence is valid on its face because Scott was properly charged with a firearm enhancement and the evidence established that only a firearm was used. Jury verdicts, charging documents, and documents signed in connection to a plea agreement are relevant to the facial validity of a judgment and sentence but will be considered only to the extent they bear on validity. *See generally In re Pers. Restraint of Coats*, 173

Wn.2d 123, 131-40, 267 P.3d 324 (2011); *In re Pers. Restraint of Stoudmire*, 141 Wn.2d 342, 353, 5 P.3d 1240 (2000). The Court of Appeals concluded that the judgment and sentence was not facially valid because it did not mirror the verdict forms and because the trial court made no formal finding of fact that Scott was armed. Scott argued below that several different exceptions to the time bar applied, but in this court, he contends only that his judgment and sentence is invalid on its face.

¶8 Determining whether a judgment and sentence is "invalid on its face" and thus not subject to the time bar has long vexed this court. *See generally Coats*, 173 Wn.2d at 131-40. "Invalid on its face" is a term of art that, like many terms of art, obscures, rather than illuminates, its meaning. *Id.* Generally speaking, a judgment and sentence is not valid on its face if it demonstrates that the trial court did not have the power or the statutory authority to impose the judgment or sentence. "Invalid on its face" does *not* mean that the trial judge committed some legal error. A trial court does not lose its authority because it commits a legal error, and most legal errors must be addressed on direct review or in a timely personal restraint petition or not at all.

¶9 For example, a judgment for a crime charged after the statute of limitations has run is not valid on its face. *Stoudmire*, 141 Wn.2d at 353-54. The erroneous judgment was not merely the product of legal error; the trial judge simply did not have authority to entertain the charges. *Id.* Similarly, a judgment for a crime that did not exist when charged is not valid on its face. *In re Pers. Restraint of Thompson*, 141 Wn.2d 712, 717-19, 10 P.3d 380 (2000). Again, the trial judge simply did not have the authority to entertain the charges. *Id.* at 719; *see also In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 866-67, 50 P.3d 618 (2002) (finding a judgment and sentence that included washed out crimes in the offender score was not valid on its face). In both *Stoudmire* and *Thompson*, the error was not apparent without consulting the charging documents, which we did not hesitate to do.

¶10 By contrast, RCW 10.73.090 does not provide a way for a petitioner to avoid the one year time limit for motions to withdraw a guilty plea on the theory that the judgment and sentence is not valid on its face because it is the product of an involuntary plea. CrR 7.8; *In re Pers. Restraint of Hemenway*, 147 Wn.2d 529, 532, 55 P.3d 615 (2002). The trial judge still has the authority to render judgment, and any error must be raised in a timely challenge or a timely motion to withdraw the plea. CrR 7.8; *see also In re Pers. Restraint of Clark*, 168 Wn.2d 581, 586-87, 230 P.3d 156 (2010) (involuntary plea does not render judgment not valid on its face). Similar principles apply to convictions. *In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 857, 100 P.3d 801 (2004) (citing *In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002) (judgment predicated on a nonexistent crime not valid on its face)). Thus, the general rule is that a judgment and sentence is not valid on its face if the trial judge actually exercised authority (statutory or otherwise) it did not have. Verdict forms, plea agreements, and charging documents may be consulted if they show that the court lacked authority and the judgment and sentence is not valid on its face. Otherwise, a judgment and sentence is valid on its face even if the petitioner can show some error that might have received relief if brought on direct review or in a timely personal restraint petition.

¶11 We hold that charging documents and verdict forms, but not the jury instructions,[3] may be consulted to determine whether a judgment and sentence is valid on its face.[4]

---

[3] We recognize we have in the past, in dicta, suggested that jury instructions could be used to show facial invalidity of judgments and sentences. Instructional error will often be the basis for relief on direct review. But the legislature has plainly indicated that the exceptions to the one year time bar are limited to enumerated grounds, and we will not use facial invalidity to circumvent that legislative intent. *See* RCW 10.73.090, .100.

[4] We respectfully disagree with the court below that the error in the judgment and sentence was the trial court's failure to enter formal findings of fact. Nothing in our law required that, and the citation to *State v. Robinson*, 104 Wn. App. 657, 664, 17 P.3d 653 (2001), is not well taken. Even if the trial court was required to enter formal findings, the failure to do so would be in the nature of a technical

## 2. Retroactivity

¶12 Since an examination of the verdict forms casts a shadow on the validity of the judgment and sentence, we turn to whether Scott is entitled to the benefit of subsequent cases that clearly require a jury to return a firearms verdict before a firearm enhancement may be imposed. *See, e.g., Recuenco* III, 163 Wn.2d at 442. Whether he is so entitled turns on whether *Recuenco* III is retroactive. First, we note that we have already held that *Blakely* itself is not retroactive and does not apply to judgments, like Scott's, that were final when it was announced. *Evans*, 154 Wn.2d at 444. We articulated the principles of retroactivity analysis in *Evans*:

"1. A new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a clear break from the past.

"2. A new rule will not be given retroactive application to cases on collateral review except where either: (a) the new rule places certain kinds of primary, private individual conduct beyond the power of the state to proscribe, or (b) the rule requires the observance of procedures implicit in the concept of ordered liberty."

*Id.* (quoting *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 326, 823 P.2d 492 (1992)). " 'New' cases are those that 'break[ ] new ground or impose[ ] a new obligation on the States or the Federal government [or] if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.' " *Id.* (alterations in original) (quoting *Teague v. Lane*, 489 U.S. 288, 301, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989)). "If before the opinion is announced, reasonable jurists could disagree on the rule of law, the rule is new." *Id.* (citing *Beard v. Banks*, 542 U.S. 406, 411, 124 S. Ct. 2504, 159 L. Ed. 2d 494 (2004)).

---

error such as that dismissed in *In re Personal Restraint of McKiearnan*, 165 Wn.2d 777, 203 P.3d 375 (2009).

¶13 *Recuenco* III was "new" under this rule. First, we note that the United States Supreme Court held that *Blakely* error was subject to harmless error analysis. *Recuenco* II, 548 U.S. at 222. Thus, it was not dictated by federal precedent. Second, *Recuenco* III was not dictated by Washington State precedent. *Recuenco* III was decided over a vigorous dissent and reversed prior precedent. 163 Wn.2d at 442 (Fairhurst, J., dissenting); *State v. Meggyesy*, 90 Wn. App. 693, 708-09, 958 P.2d 319 (1998) (citing *State v. Thorne*, 129 Wn.2d 736, 921 P.2d 514 (1996) (holding a trial court could enter a firearm enhancement based on a deadly weapon verdict when the judge determined that the weapon was a firearm)), *abrogated by Recuenco* I, 154 Wn.2d 156.[5] Third, federal courts seem unanimous that *Blakely* is not retroactive. *E.g.*, *Winchester v. United States*, 477 F. Supp. 2d 81, 85 (D.D.C. 2007). Since Scott's judgment and sentence was final before *Recuenco* III was announced and since the opinion does not concern " 'private individual conduct beyond the power of the state to proscribe,' " *Recuenco* III applies retroactively only if it " 'requires the observance of procedures implicit in the concept of ordered liberty.' " *Evans*, 154 Wn.2d at 444 (quoting *St. Pierre*, 118 Wn.2d at 326).

¶14 The right to a jury is a fundamental right. *Evans*, 154 Wn.2d at 445 (citing U.S. CONST. amend. VI). But, as we noted in *Evans*, "the identity of the fact finder for sentencing purposes was *not* implicit in the concept of ordered liberty and did not implicate the fundamental fairness of the proceedings." *Id.* at 446-47 (citing *Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004)). The same principle applies here. Whether a jury, rather than a judge, determines whether an offender is armed with a firearm rather than a deadly weapon does not implicate "the observance of procedures implicit in the concept of ordered liberty." Accordingly, we hold that *Recuenco* III does

---

[5] We recognize that *Meggyesy* was formally abandoned in *Recuenco* I, not *Recuenco* III.

not apply retroactively to cases that were final when it was announced. Scott is not entitled to relief based on its holdings.[6]

## CONCLUSION

¶15 We hold that a court may consider inconsistency between the verdict forms and the judgment and sentence to determine whether a judgment and sentence is not valid on its face. However, we hold that *Recuenco* III is not retroactive. We deny Scott's motion for relief and dismiss this petition.

OWENS, J., concurs.

¶16 STEPHENS, J. (concurring) — I concur in the lead opinion's dismissal of Joshua Dean Scott's personal restraint petition (PRP). But I cannot endorse the lead opinion's gratuitous announcement of a new "rule" affecting determinations of facial invalidity. After tracing our case law since *Stoudmire*,[7] the lead opinion states that courts may review charging documents, verdict forms, and documents related to plea agreements, "but not the jury instructions," in assessing whether a judgment and sentence is facially valid. Lead opinion at 917 & n.3. No support exists for drawing this line.

---

[6] We are not without sympathy for the perspective advocated by our dissenting colleagues. But United States Supreme Court precedent makes clear that trial judges *do* have the power to enter judgment even when the jury is not instructed on an element of the crime. *See Neder v. United States*, 527 U.S. 1, 8-9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). The United States Supreme Court has held the same principle applies to sentencing enhancements. *Recuenco* II, 548 U.S. at 219 (citing *Neder*). This is a power that can be abused or misused and is subject to revision on review, but *Neder* and *Recuenco* II establish that the use of this power does not create a structural defect in a trial. *Recuenco* II, 548 U.S. at 218-19; *Neder*, 527 U.S. at 8-9.

[7] *In re Pers. Restraint of Stoudmire*, 141 Wn.2d 342, 5 P.3d 1240 (2000), *overruled in part by In re Pers. Restraint of Turay*, 153 Wn.2d 44, 101 P.3d 854 (2004).

¶17 As with our recent decision in *Coats*, this case does not present an occasion to revisit our precedent since *Stoudmire*. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 136 n.8, 267 P.3d 324 (2011). Thus, we begin with the proposition that courts may look beyond the four corners of a judgment and sentence in order to ascertain facial invalidity under RCW 10.73.090. *Coats*, 173 Wn.2d at 138-39. The court in *Coats* observed that we have never rested a determination of facial invalidity on "jury instructions, trial motions, and other documents that relate to whether the defendant received a fair trial," further cautioning that defects in jury instructions cannot render a judgment and sentence invalid on its face. *Id.* at 140 & n.11. Presumably, the lead opinion seeks to build on *Coats* and draw a bright line to limit the grounds upon which courts will consider the merits of otherwise untimely PRPs.

¶18 While I support the lead opinion's goal, I believe its approach is misguided. Refusing to find a judgment and sentence facially invalid based on defective jury instructions is not the same thing as refusing to consider jury instructions, along with charging documents and verdict forms, to determine whether a claim of facial invalidity is supported. Unfortunately, the categorical refusal to look at jury instructions could actually lead a court to find facial invalidity where none exists. Consider, for example, a case similar to this one but where the law post-*Recuenco* III[8] applies. The information (which the court considers) charges a firearm enhancement; the special verdict form (which the court also considers) reflects a deadly weapon finding. If we look at nothing else, a judgment and sentence imposing a firearm enhancement reveals a facial invalidity. But, what if the jury instructions relating to the special verdict form tell the jury it should give an affirmative answer on the special verdict form only if it finds the defendant armed with the charged firearm? In other words, under the law

---

[8] *State v. Recuenco*, 163 Wn.2d 428, 180 P.3d 1276 (2008).

explained to the jury, a deadly weapon verdict reflected a firearm finding. Without an ability to consider the jury instructions in conjunction with the charging document and the special verdict form, a court reviewing the judgment and sentence is unable to confirm the absence of any facial invalidity. This makes no sense. After all, courts often ascertain the meaning of special verdict forms in light of the instructions given to the jury. Why not in this context? My concern is that the artificial line the lead opinion draws provides no real limitation on PRPs and may well *expand* as often as limit the instances in which facial invalidity will be found.

¶19 Nor is this an appropriate case in which to engage in such line drawing. In support of his PRP, Scott offers only the charging document, verdict forms, and judgment and sentence. *See* Personal Restraint Pet. (Apr. 10, 2006), Apps. 1, 2, 3. Rather than announce a bright line rule about jury instructions, we should decide this case based on what is before us. Scott cannot demonstrate the facial invalidity of his judgment and sentence because it is valid under the law in effect at the time it was entered, and Scott is not entitled to the retroactive benefit of our later decisions. For this reason, his PRP must be dismissed.

FAIRHURST, J., concurs with STEPHENS, J.

¶20 MADSEN, C.J. (concurring/dissenting) — The petitioner claims that the one-year time bar of RCW 10.73-.090(1) does not prevent consideration of his personal restraint petition because his judgment and sentence is invalid on its face. The invalidity he claims is that the trial court imposed a firearm sentence enhancement rather than a deadly weapon sentence enhancement, although the jury found by special verdict that the petitioner was armed with a deadly weapon. On the face of the judgment and sentence, however, the trial judge checked a box indicating there had

been a special verdict/finding for use of a firearm. In other words, the sentence reflected on the face of the judgment and sentence matches the verdict as it appears on the face of the judgment and sentence. Accordingly, the judgment and sentence is valid on its face.

¶21 The lead opinion concludes, however, that the petition is not time barred. The lead opinion says that imposing a firearm enhancement when the verdict form indicated a deadly weapon finding is an error involving imposition of a sentence in excess of the trial court's authority, the type of invalidity contemplated by RCW 10.73.090(1). To reach this conclusion, however, the lead opinion must go "behind" the face of the judgment and sentence.

¶22 I disagree with this approach. As I explain in my concurrence in *In re Personal Restraint of Coats*, 173 Wn.2d 123, 267 P.3d 324 (2011), a judgment and sentence is invalid on its face for purposes of RCW 10.73.090(1) only when the claimed invalidity appears on the face of the judgment and sentence. A court should not look behind the judgment and sentence and examine a charging document, special verdict form, or any other part of a petitioner's case record to determine whether some invalidity exists that is not apparent on the face of the judgment and sentence.[9]

¶23 Here, no invalidity appears on the face of the judgment and sentence. The judgment and sentence on its face shows a verdict or finding of use of a firearm and a firearm sentence enhancement was imposed. Because there is no invalidity appearing on the face of the judgment and sentence, the petitioner's argument for avoiding the one-

---

[9] As I explain in *Coats*, 173 Wn.2d at 158-59 (Madsen, C.J., concurring), a narrow exception should apply if it is impossible to tell from the face of the judgment and sentence for what precise charge the petitioner was sentenced. In such circumstances, a court should examine the judgment in connection with the record solely for the purpose of determining the precise charge for which sentence was imposed. However, here, this exception does not apply because on the face of the judgment and sentence the trial judge indicated a special verdict/finding for use of a firearm. This is the finding necessary to support a firearm sentence enhancement, and therefore no question arises from the face of the judgment and sentence about the basis for the firearm enhancement.

year time bar in RCW 10.73.090(1) on the basis of facial invalidity does not apply. He raises no other argument in this court for avoiding the one-year bar, and accordingly his petition should be time barred.

¶24 I agree that the petition should be dismissed.

J.M. JOHNSON, J., concurs with MADSEN, C.J.

¶25 C. JOHNSON, J. (dissenting) — The issue in this case, properly framed, is whether a judgment and sentence could ever be valid when a judge sentences someone for something the jury did not find. The answer to that question is, and should always be, no.

¶26 The lead opinion concludes correctly that we may consult the verdict forms to illuminate whether the defendant's judgment and sentence is valid on its face. The lead opinion then proceeds, however, to incorrectly apply the information the verdict forms disclose. It is, or at least should be, self-evident that a judge lacks authority to impose a sentence in excess of that legally authorized. Yet that is precisely what the judge in this case did. And the lead opinion, after consulting the verdict forms evidencing this unauthorized act, concludes the trial court *did not* exceed its authority. This conclusion is vexing.

¶27 That the judgment and sentence in this case was final before *Recuenco* III is not dispositive of whether the trial court exceeded its authority, which it necessarily did when it sentenced the defendant for a crime not found by the jury. *State v. Recuenco*, 163 Wn.2d 428, 442, 180 P.3d 1276 (2008) (*Recuenco* III). Incredibly, the lead opinion concludes the defendant in this case is not entitled the "benefit" of our holding in *Recuenco* III. The lead opinion bases this conclusion on its view that our opinion in that case is a static point on a *Blakely* Sixth Amendment jurisprudential timeline. *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Because the

defendant's judgment and sentence became final prior to *Recuenco* III, the lead opinion reasons, the principles supporting our holding in that case do not apply. This view is incorrect. In *Recuenco* III, we concluded the error occurred when "the trial judge imposed a sentence enhancement for something the State did not ask for and the jury did not find. The trial court simply exceeded its authority in imposing a sentence not authorized by the charges." *Recuenco* III, 163 Wn.2d at 442. In other words, we recognized that the error occurred after the jury verdict, that is, after the rights the Sixth Amendment protects had been upheld. *Recuenco* III, 163 Wn.2d at 441. An error at sentencing, therefore, does not implicate the Sixth Amendment exclusively. I believe it is also a due process violation to convict a defendant of one offense and sentence for another. That such a violation existed prior to *Recuenco* III should not be remarkable or, in my opinion, even questionable. And our recognition of this type of violation in *Recuenco* III did not somehow make it "new."

¶28 "[A] careful review of our cases reveals that we have found errors rendering a judgment invalid under RCW 10.73.090 only where a court has in fact exceeded its statutory authority in entering the judgment or sentence." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 135, 267 P.3d 324 (2011). The lead opinion's conclusion that a court does not exceed its authority by sentencing someone for something the jury did not find borders on absurdity. A judgment and sentence should always be invalid following such an act, regardless of when the judgment and sentence became final.

ALEXANDER and SANDERS, JJ. PRO TEM., concur with C. JOHNSON, J.