IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>         v.<br><br>KEITH RAYSHAWN GOMEZ,<br><br>                   Appellant. | No. 87085-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, C.J. — Keith Gomez appeals from the trial court's order on remand determining that he was properly charged and sentenced in adult court. Gomez contends that the trial court erred by failing to follow the appellate court's order on remand, which directed the trial court to conduct a declination hearing under *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 787, 100 P.3d 279 (2004). Gomez also raises additional issues in a statement of additional grounds (SAG) and a consolidated personal restraint petition (PRP). We hold that the trial court's order properly complied with the mandate from Division Two of this court. We further hold that none of the grounds presented in Gomez's SAG establish an entitlement to appellate relief and that the PRP is time-barred. Accordingly, we affirm the trial court's order and deny the PRP.

FACTS

On September 22, 1997, the State charged Gomez and two codefendants with one count of murder in the first degree and one count of attempted murder in

the first degree. Gomez was 17 years old at that time, and the crimes were "serious violent offenses," so the charges were filed in adult criminal court under former RCW 13.04.030(1)(e)(v) (1997) (conferring automatic adult jurisdiction). Gomez turned 18 years old about two weeks later.

On February 5, 1998, as part of a plea agreement, the State amended the charges to felony assault in the second degree with a deadly weapon, felony assault in the third degree, and misdemeanor assault in the fourth degree. The reduced charges did not include any of the serious violent offenses that automatically placed jurisdiction with the adult court. *See* former RCW 13.04.030(l)(e)(v) (1997). The adult court accepted Gomez's guilty plea and sentenced him to a total of 18 months of incarceration. Gomez did not appeal from the judgment and sentence, and he fully served his sentence decades ago.

In 2022, Gomez moved pro se in superior court to dismiss for lack of jurisdiction. Gomez argued that the amended charges were not auto-decline offenses, so the adult criminal court should have remanded to the juvenile division for a decline hearing. He thus asserted that he was entitled to a hearing pursuant to *Dillenburg v. Maxwell*, 70 Wn.2d 331, 422 P.2d 783 (1967), on whether declination of juvenile jurisdiction was appropriate. The superior court transferred the motion to Division Two of this court for consideration as a PRP.

In response, the State conceded that the PRP was not time-barred because the adult court lacked statutory jurisdiction to enter a judgment and sentence on the reduced charges. The State argued that the remedy for this

2

error is a de novo hearing in adult criminal court on whether juvenile jurisdiction would have been appropriate. Accordingly, the State requested a remand for a hearing pursuant to *Dalluge* and *Dillenburg* to determine whether declination would have been appropriate. In an unpublished opinion, Division Two accepted the State's concession and ruled as follows:

> The State concedes that Gomez's petition is not time barred and that Gomez is entitled to a jurisdiction declination hearing under *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 787, 100 P.3d 279 (2004). We accept the State's concession, grant Gomez's petition, and remand to the adult criminal court to conduct a declination hearing under *Dalluge*.[1]

The trial court on remand held hearings over three days between April and September 2023. Although the State had previously conceded that Gomez was entitled to a declination hearing because the adult court lacked jurisdiction, it argued to the trial court on remand that no jurisdictional error existed and the convictions and sentence should stand. This was so, the State asserted, because Gomez was an adult when the prosecutor amended the charges and the court accepted his guilty plea and imposed the sentence and there was no timely order extending juvenile court jurisdiction.

The trial court indicated that it was "a little confused" about the State's apparent change in position and questioned whether it could do so on remand. The court also expressed concern as to how it should interpret the appellate court's mandate:

---

[1] *In re Pers. Restraint of Gomez*, No. 57213-3-II, slip op. at 1-2 (Wash. Ct. App. December 28, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2057213-3-II%20Unpublished%20Opinion.pdf.

> Again, I don't want to get sideways with the Court of Appeals if then I rule and say -- if I agreed with the State's argument that a declination hearing is not necessary, what am I doing with the Court of Appeals order which said I'm supposed to have a declination hearing?
>
> . . .
>
> If the Court of Appeals orders me to do something, I'm in the habit of trying to comply with what they are asking me to do.

The court asked the parties for further briefing as to whether there is "any type of waiver issue that the State is now subject to given that they have seemed to have said to Court of Appeals that a declination hearing is necessary."

In briefing and oral argument, the State argued that Gomez's judgment and sentence was facially valid because the juvenile court never had jurisdiction over Gomez and that it would be impossible for the State to confer jurisdiction based on an erroneous conclusion of law. The State noted that its "facile" concession brief "failed to observe that Gomez was an adult at the time of the amendment, plea, and sentence" and that the appellate court remanded without further analysis based on the State's erroneous concession. The State argued that the appellate court did not decide the issue of jurisdiction; rather, it remanded for the adult criminal court to decide whether jurisdiction was proper. Here, because of the way the case was originally charged and the fact that the charges were not amended until after Gomez turned 18 years old, no moment in time exists when the juvenile court had jurisdiction. The State thus asked the court to find that a full-blown declination hearing would be a "futile act" because the juvenile court would have recognized it lacked jurisdiction to hold a declination hearing over the adult defendant.

Gomez argued that the trial court must comply with the appellate court's order, which expressly required it to "conduct a declination hearing under *Dalluge*" – not to decide whether to conduct it. Gomez further argued that if the court was inclined not to hold the declination hearing, then the charges should be dismissed under CrR 8.3 because the State's misconduct in overcharging Gomez initially, then waiting until he turned 18 years old to reduce the charges, resulted in the loss of juvenile jurisdiction. At oral argument, Gomez nevertheless agreed that "the juvenile court had never obtained jurisdiction or the authority to act and it never extended that," so "there really is no scenario under which the Court would conduct a factual hearing and use the *Kent*[2] factors to determine if declination was at any time appropriate." Rather, Gomez sought "more of the *Dillenburg*-style hearing where there is analysis of whether the transfer was appropriate, whether there was misconduct under [CrR] 8.3 and then whether the Court should dismiss for those reasons."

On October 12, 2023, the trial court entered findings and conclusions on remand. First, the trial court noted that the purpose of conducting a hearing under *Dalluge* would be to determine whether adult criminal court jurisdiction was proper when Gomez's charges were amended on February 5, 1998. The trial court concluded that Gomez was properly charged in adult court under former RCW 13.04.030(l)(e)(v)(A) and that the juvenile court did not have authority in the matter given that Gomez was an adult when the charges were amended and

---

[2] *Kent v. United States*, 383 U.S. 541, 566-67, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966) (establishing eight factors the juvenile court must consider in determining whether to decline jurisdiction).

juvenile jurisdiction had not been timely extended, so any analysis of the *Kent* factors would be futile. The trial court also ruled that "Gomez's claim of prosecutorial overcharging is not properly before this Court on remand" and "[t]he question for this Court to decide is only whether there was jurisdiction on February 5, 1998." (Emphasis omitted.) The trial court concluded that "[t]here being no jurisdictional error, the convictions and sentence stand." Gomez appealed the trial court's ruling.

Meanwhile, on June 21, 2023, Gomez moved pro se in superior court to withdraw his guilty plea. The superior court determined that the motion was time-barred and transferred it to this court for consideration as a personal restraint petition. *See* CrR 7.8(c)(2) (untimely motions must be transferred to this court); CrR 4.2(f) (postjudgment motions to withdraw pleas are governed by CrR 7.8).[3] This court consolidated Gomez's personal restraint petition with his appeal.

---

[3] Gomez objects to the transfer, asserting that that the superior court failed to comply with CrR 7.8(c)(2). That rule requires transfer of a postconviction motion to this court for consideration as a personal restraint petition unless the motion is not time barred and either the defendant has made a substantial showing of merit or a factual hearing is required to decide the motion. *In re Pers. Restraint of Ruiz-Sanabria*, 184 Wn.2d 632, 638, 362 P.3d 758 (2015) (citing CrR 7.8(c)(2)). When this court considers a transferred motion as a personal restraint petition, it is not bound by the conclusions below on timeliness, the necessity of a factual hearing, or whether there is a showing of entitlement to relief. In applying the appropriate standards for consideration of a personal restraint petition, this court considers de novo whether relief is barred by RCW 10.73.090. Here, because the superior court determined that the collateral attack was untimely, the superior court was required to transfer the matter without reaching the merits. *See State v. Molnar*, 198 Wn.2d 500, 509, 497 P.3d 858 (2021). Accordingly, Gomez's challenge to the superior court's transfer order is denied.

6

ANALYSIS

Order on Remand

Gomez contends that the trial court erred by failing to carry out the appellate court's remand order, which specifically required it to conduct a declination hearing under *Dalluge*. Because the court improperly attempted to analyze whether a declination hearing was appropriate, Gomez contends that the case must be remanded for a declination hearing. We disagree.

"The trial court's discretion to resentence on remand is limited by the scope of the appellate court's mandate." *State v. Kilgore*, 167 Wn.2d 28, 42, 216 P.3d 393 (2009). Trial courts "must strictly comply with directives from an appellate court which leave no discretion to the lower court." *State v. Schwab*, 134 Wn. App. 635, 645, 141 P.3d 658 (2006); *see also State v. Toney*, 149 Wn. App. 787, 792, 205 P.3d 944 (2009) (when an appellate court remands only for a ministerial correction, the trial court lacks discretion to conduct a full resentencing). In contrast, when the mandate does not limit the trial court to a ministerial correction, it may "exercise its authority to decide any issue necessary to resolve the case." *Schwab*, 134 Wn. App. at 645.

Generally, an adult court's jurisdiction over a juvenile must be confirmed by a *Dillenburg* hearing. *Dalluge*, 152 Wn.2d at 782. The purpose of a *Dillenburg* hearing is to determine whether declination of juvenile court jurisdiction would be proper. *Dalluge*, 152 Wn.2d at 784-85; *Dillenburg*, 70 Wn.2d at 353. In *Dalluge*, the 17-year-old defendant was in adult court after being automatically declined on a charge of rape in the first degree. 152 Wn.2d

7

at 776. Although Dalluge was still a juvenile when the charges were amended to offenses not subject to automatic decline, neither party requested remand to juvenile court. *Dalluge*, 152 Wn.2d at 776. Our Supreme Court concluded that the adult court lacked jurisdiction over the case and remanded to the juvenile court to determine whether it would have declined the case to adult court in accordance with *Dillenburg. Dalluge*, 152 Wn.2d at 782-87.

Here, Division Two of this court accepted the State's concession and directed the superior court to take further action on remand by "conduct[ing] a declination hearing under *Dalluge*." But the State's concession overlooked the salient fact that Gomez, unlike Dalluge, was 18 years old when the charges were amended on February 5, 1998. Thus, the appellate court was never asked to decide the issue before the trial court on remand: whether Gomez's judgment and sentence was facially valid because the juvenile court never had jurisdiction over Gomez. Under these unusual circumstances, the trial court was necessarily asked to evaluate and rule upon the propriety of adult jurisdiction.

Here, Gomez agreed that the record was sufficiently developed for the trial court to answer the question. Because the juvenile court lacked jurisdiction to hold a declination hearing over Gomez, any attempt to conduct it would be futile. Gomez asked the trial court to conduct a *Dillenburg*-type hearing to evaluate whether he was deprived of juvenile court's jurisdiction based on the State's misconduct, but he does not challenge the court's conclusion that this issue was not properly before it on remand. We therefore agree with the State that the trial

8

court complied with the appellate court's mandate. We emphasize that our decision is narrow, based on the unusual procedural posture presented herein.

Gomez cites *Dalluge* for the proposition that "the only question before the superior court on remand was whether declination would have been in the best interests of Gomez or the public." *Dalluge* noted that "[a]fter the decline hearing, the juvenile court can waive its exclusive jurisdiction by 'transferring jurisdiction of a particular juvenile to adult criminal court upon a finding that the declination would be in the best interest of the juvenile or the public.' " 152 Wn.2d at 782 (citation omitted) (quoting RCW 13.04.030(1)(e)(i); RCW 13.40.110(2)). This statutory procedure has no relevance where, as here, Gomez did not request a decline hearing by the juvenile court, nor did any court order the juvenile court to conduct such a hearing.

Gomez, citing *State v. Maynard*, 183 Wn.2d 253, 351 P.3d 159 (2015), also asserts that the trial court on remand should have extended its authority to apply the provisions of the Juvenile Justice Act of 1977 (JJA), chapter 13.40 RCW, to Gomez rather than on whether the juvenile court could have held a declination hearing in 1998. Gomez's reliance on *Maynard* is misplaced. In *Maynard*, the defendant was charged in juvenile court shortly before his 18th birthday. *Maynard*, 183 Wn.2d at 258. Maynard's attorney failed to move to extend the juvenile court's jurisdiction before Maynard turned 18 years old. *Maynard*, 183 Wn.2d at 258. As a result of this failure, the juvenile court dismissed the charges against Maynard when he turned 18 years old, and the State filed charges in superior court. *Maynard*, 183 Wn.2d at 258. The Supreme

9

Court held that Maynard received ineffective assistance of counsel and remanded for further proceedings consistent with the JJA, noting that this would put Maynard in the same position he was in before the time to extend juvenile jurisdiction lapsed. *Maynard*, 183 Wn.2d at 264. The court also stated that if Maynard was convicted, the trial court could impose a juvenile sentence. *Maynard*, 183 Wn.2d at 264. Here, in contrast, Gomez does not seek to be resentenced for a sentence that he completed long ago. Rather, he asked for his convictions to be vacated. *Maynard* does not compel a different outcome.

Statement of Additional Grounds

In addition to his attorney's briefing on appeal, Gomez raises three additional issues in his SAG. A defendant may file a SAG "to identify and discuss those matters related to the decision under review that the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." RAP 10.10(a). Although references to the record and citations to authority are not required, "the appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c).

1. Access to Court

Gomez asserts he mailed three pro se motions to the superior court in June 2023, but that two of the three were never filed. Gomez raised this issue with the trial court, which explained that the motions may have been sent to a different department. Gomez contends that the superior court clerk committed misconduct by failing to file the two missing motions, thereby denying his

constitutional right to access the courts. Gomez insists that he has proof of mailing and copies of these documents, but if so, he did not provide it. Nor does he claim to have served the missing documents on the State. Accordingly, we cannot reach the merits of Gomez's claim relating to these documents. *See* RAP 10.10(c) ("[o]nly documents that are contained in the record on review should be attached or referred to in the statement"). To the extent Gomez relies on matters outside the record, the issue may not be considered on direct appeal, but rather may be the subject of a properly supported PRP. *State v. McFarland*, 127 Wn.2d 322, 338 n. 5, 899 P.2d 1251 (1995).

### 2. Youthfulness

Next, Gomez cites *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), for the proposition that the juvenile court retained jurisdiction because his crimes were committed when he was 17 years old. He contends that *Houston-Sconiers* overruled any authority to the contrary. Gomez is incorrect. In *Houston-Sconiers*, our Supreme Court held that the Eighth Amendment "requires that trial courts consider the mitigating qualities of youth at sentencing and have discretion to impose any sentence below the otherwise applicable [Sentencing Reform Act of 1981] range and/or sentence enhancements when sentencing a juvenile in adult court, regardless of how the juvenile got there." *In re Pers. Restraint of Carrasco*, 1 Wn.3d 224, 230, 525 P.3d 196 (2023) (citing *Houston-Sconiers*,188 Wn.2d 1 at 20-21). *Houston-Sconiers* bears no relevance to the propriety of adult court jurisdiction.

### 3. Conflict with Counsel

Relying on *State v. Regan*, 143 Wn. App. 419, 177 P.3d 783 (2008), Gomez maintains that reversal is required because he informed the trial court he was "at odds" with his court-appointed attorney and the trial court failed to adequately inquire into the reasons for the conflict. "The trial court has a duty to investigate potential attorney-client conflicts of interest if it knows or reasonably should know that a potential conflict exists." *Regan*, 143 Wn. App. at 425-26. Additionally, a court may grant a defendant's motion to substitute counsel when counsel and defendant are "at such odds as to prevent presentation of an adequate defense." *State v. Schaller*, 143 Wn. App. 258, 268, 177 P.3d 1139 (2007).

Here, Gomez did not assert that his attorney had a conflict of interest. Rather, Gomez informed the trial court that he was "at odds" with his attorney because he disagreed with them on certain issues. Gomez also stated that he wanted to "bring[] to the Court's attention the issues that I raised with my attorney that I feel has not been fulfilled on my behalf." The trial court explained, "If there are issues that you want raised that are not part of the specific briefed issues before me today and you want to file something in writing, that's certainly your right to do that." Gomez responded, "Okay." Gomez later told the trial court that he had filed a "motion for reconsideration" raising a claim of ineffective assistance of counsel. But, as discussed above, the motion was never filed or served on the State. And the motion does not appear in the record below. Gomez has not established that a basis for relief exists.

Personal Restraint Petition

In his PRP, Gomez seeks to withdraw his guilty plea on the grounds it was involuntary and based on ineffective assistance of counsel. Because these claims are untimely, the PRP must be denied.

RCW 10.73.090(1) provides that "no petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." A petitioner bears the burden of showing that his petition was timely filed. *In re Pers. Restraint of Quinn*, 154 Wn. App. 816, 833, 226 P.3d 208 (2010). Gomez did not appeal from his judgment and sentence, so it became final when it was entered on February 5, 1998. *See* RCW 10.73.090(3)(a). Gomez filed the motion underlying this petition on June 21, 2023, many years after expiration of the one-year time limit. Therefore, the petition is untimely unless Gomez's judgment and sentence is facially invalid or was entered without competent jurisdiction, or unless Gomez asserts solely grounds for relief exempt from the time limit under RCW 10.73.100. RCW 10.73.090; *In re Pers. Restraint of Stoudmire*, 141 Wn.2d 342, 348-49, 5 P.3d 1240 (2000).

Gomez asserts that he should be able to withdraw his plea based on ineffective assistance of counsel. This is so, he contends, because defense counsel failed to move for his case to be transferred to the juvenile court for a decline hearing after the charges were amended. A defendant may withdraw their guilty plea for manifest injustice if they received ineffective assistance of

13

counsel. *State v. Wakefield*, 130 Wn.2d 464, 472, 925 P.2d 183 (1996). But a claim of ineffective assistance of counsel does not qualify for any exception to the time bar. *See Stoudmire*, 141 Wn.2d at 349 (claim of ineffective assistance falls neither within RCW 10.73.090 nor within any exception set forth in RCW 10.73.100); *In re Pers. Restraint of Tricomo*, 13 Wn. App. 2d 223, 241-42, 463 P.3d 760 (2020) (ineffective assistance of counsel claims do not qualify as exceptions to the time-bar); *In re Pers. Restraint of Adams*, 178 Wn.2d 417, 426, 309 P.3d 451 (2013) ("ineffectiveness claims . . . do not fit within any of the exceptions listed in chapter 10.73 RCW."). This claim is untimely.

Gomez also seeks to raise an ineffective assistance of counsel claim based on newly discovered evidence, an exception to the time bar under RCW 10.73.100(1). Gomez claims he recently discovered that in 1997, his attorney filed a *Knapstad*[4] motion to dismiss the charges but the motion was never heard on the merits. Gomez asserts that he would not have pleaded guilty if he knew his attorney had filed a motion that could have resulted in dismissal. The Washington Supreme Court has never affirmatively endorsed the notion that a petitioner may raise an otherwise untimely claim of ineffective assistance of counsel based on newly discovered evidence. *See In re Pers. Restraint of Yates*, 183 Wn.2d 572, 576, 353 P.3d 1283 (2015) (declining to "broadly interpret[] this exception to include newly discovered evidence relating to the ineffectiveness of trial counsel."). In any case, to qualify for an exception to the time bar based on newly discovered evidence, the petitioner must show that they

---

[4] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

14

"acted with reasonable diligence in discovering the evidence and filing the petition or motion." RCW 10.73.100(1). Gomez has always had the right to access his own case file, and could have discovered the motion long ago. This claim is not exempt from the time bar.

Next, Gomez cites *Dalluge* in support of the proposition that his judgment and sentence is facially invalid because it was not entered by a court of competent jurisdiction. Gomez is incorrect. *Dalluge* held that the one-year time bar did not apply because the adult court was not a court of competent jurisdiction over the juvenile defendant. 152 Wn.2d at 785. Unlike Dalluge, the juvenile court never had jurisdiction over Gomez. More fundamentally, in *State v. Posey*, our Supreme Court clarified that "juvenile courts are simply departments (or divisions) of the superior courts," that "[t]he constitution grants the superior courts original jurisdiction 'in all criminal cases amounting to felony,' " and that "the legislature cannot rescind this constitutional jurisdiction or vest it exclusively in another court." 174 Wn.2d 131, 141, 272 P.3d 840 (2012) (emphasis omitted) (citation omitted) (quoting WASH. CONST. art. IV, § 6.) Therefore, "[w]here a person is no longer subject to the procedures governing juvenile adjudications, the superior court retains such constitutional jurisdiction." *Posey*, 174 Wn.2d 131 at 142. In so holding, the court acknowledged that "our prior jurisprudence discussing juvenile court jurisdiction is not a model of clarity." *Posey*, 174 Wn.2d 131 at 137. Here, the juvenile court lacked statutory authority to act in Gomez's case, so the superior court retained jurisdiction to sentence him.

15

Gomez also contends that his guilty plea was not knowing, intelligent and voluntary because he was not informed by the trial court, the State, or defense counsel that once the original offenses were amended, the superior court lost jurisdiction to enter the judgment and sentence. As discussed above, the superior court had competent jurisdiction over Gomez. Moreover, an involuntary guilty plea does not render a judgment and sentence invalid on its face within the meaning of RCW 10.73.090, nor is it an exempt ground for relief under RCW 10.73.100. *See In re Pers. Restraint of Scott*, 173 Wn.2d 911, 917, 271 P.3d 218 (2012) ("RCW 10.73.090 does not provide a way for a petitioner to avoid the one year time limit for motions to withdraw a guilty plea on the theory that the judgment and sentence is not valid on its face because it is the product of an involuntary plea"); *State v. Wheeler*, 183 Wn.2d 71, 80, 349 P.3d 820 (2015) ('[a]n untimely personal restraint petition is simply not a vehicle for an untimely motion to withdraw a guilty plea.").

Gomez also asserts that his judgment and sentence is facially invalid because the sentence he received is an unlawful "hybrid" sentence. He contends that the sentencing error rendered the plea involuntary based on "mutual mistake." Gomez's reliance on *State v. Grayson*, 130 Wn. App. 782, 125 P.3d 169 (2005), is misplaced. In *Grayson*, the defendant was already serving a 138-month sentence when he was convicted and sentenced on new charges. 130 Wn. App. at 784. This court rejected the sentencing court's imposition of a "hybrid" (part concurrent, part consecutive) sentence under RCW 9.94A.589(3). *Grayson*, 130 Wn. App. at 782-83. Here, the court imposed concurrent

16

sentences for Gomez's two felony convictions under RCW 9.94A.589(1)(a) and a consecutive sentence for his misdemeanor conviction under RCW 9.92.080, so *Grayson* does not apply. And even if Gomez could establish that his sentence was somehow unlawful, a petitioner "may not rely on the existence of a facial sentencing error to assert other time barred claims," such as a motion to withdraw a guilty plea. *In re Pers. Restraint of Snively*, 180 Wn.2d 28, 32, 320 P.3d 1107 (2014).

We affirm the trial court's order on remand and deny the PRP.

Smith, C.J.

WE CONCUR:

Díaz, J.                          Coburn, J.